BRADFORD V. THE TERRITORY *ex rel. Woods.*

[*Opinion filed July 20, 1893.*]

1.   INFORMATION— *How Attacked.*—An information must be attacked by a demurrer in the court below, or by motion in arrest of judgment, or by an assignment of error in this court.   It is well settled that a complaint or information may be attacked in the Supreme Court for the first time; but there must be a specific assignment of error before the question can be considered in a court of appeals.

2.   QUO WARRANTO—*Information.*—The writ of *quo warranto* and information in the nature of *quo warranto* were both common law remedies.

3.   TERRITORIES—*Relation to United States.*—A Territory sustains a relation to the United States different from a State; and the Constitution of the United States, in its provisions for trial by jury in suits at common law, is in force in the Territories.

4.   TRIAL BY JURY.—*Verdict.*—A common law jury consists of twelve persons, and a unanimous verdict is required.   When a jury consists of twelve persons a verdict rendered by nine of such jurors is invalid and should be set aside.

5.   QUO WARRANTO—*Verdict.*—On the trial of an information in the nature of a *quo warranto*, the respondent is entitled to a trial by jury and to a unanimous verdict.

*Appeal from the District Court of Oklahoma County, Hon. John G. Clark, Judge.   Reversed.*

*C. R. Reddick*, for Appellant.

*J. H. Woods*, for Appellee.

The opinion of the court was delivered by

BURFORD, J.:—This was a proceeding in the nature of a *quo warranto* to remove the appellant from the office of county clerk for wilful mal-administration in office.

The information is filed by the county attorney, and charges in substance that the appellant Bradford is the regularly elected, qualified and acting clerk of Oklahoma county.   That as such clerk it was his duty to issue licenses for the sale of malt, spiritous and vinous

liquors to persons to whom such licenses were granted by the board of county commissioners of said county upon the payment into the county treasury of the amounts required by law therefor.

That said Bradford as such clerk did issue and deliver a license to each of several persons named, after the same had been granted by the board of county commissioners without the parties having paid into the county treasury the sums of money or warrants required by law to be paid therefor, or any other sums.

That said Bradford before issuing the said licenses to said parties did, wilfully and corruptly, take and receive from each of said persons and firms as payment for such licenses the following sums in money and county warrants of said Oklahoma county, to-wit:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| From | John Hrube | - | - | - | - | - | $100 | 00 |
| " | T. W. Rogers | - | - | - | - | | 50 | 00 |
| " | Charles Balzer | - | - | - | - | | 50 | 00 |
| " | Kunkle & Miller | - | - | - | - | | 50 | 00 |
| " | Pyles & Co. | - | - | - | - | - | 100 | 00 |
| " | Frank Rayney | - | - | - | - | | 100 | 00 |
| " | Kretzon & Sannencheim | - | - | - | | 50 | 00 |
| " | W. S. Burrus | - | - | - | - | | 50 | 00 |
| " | Crane & Co. | - | - | - | - | - | 100 | 00 |
| " | John Kohler | - | - | - | - | | 50 | 00 |
| " | W. J. Carter | - | - | - | - | - | 50 | 00 |
| " | A. L. Chitty | - | - | - | - | | 50 | 00 |
| " | J. Kaufman | - | - | - | - | - | 50 | 00 |
| | Total - | - | - | - | - | - | $850 | 00 |

and of the value of $700.00.

And that he wholly refused to pay the same into the county treasury, but has appropriated the same to his own use and benefit with intent to deprive the county thereof.

It was also alleged that he wilfully and fraudulently over-drew his salary.

And it is asked that he be removed from office by judgment of ouster.

To this complaint the appellant files a general denial,. except as to the allegations as to his official character, which were admitted.

Trial was had by jury and finding and judgment against the appellant; that he was guilty as charged, and that he had forfeited his said office.

Motion is for a new trial and in arrest of judgment were filed and overruled and exceptions saved, and the case is brought here on appeal.

It is insisted in argument of counsel for appellant that the information does not state facts sufficient to constitute a cause of action, but the question is not before this court. The information was not attacked by demurrer in the court below, or by the motion in arrest of judgment, or is there any assignment of error in this. court that calls in question the sufficiency of the infortion. It is well settled that a complaint or information. may under our code of civil procedure be attacked for the first time in the supreme court, but there must be a specific assignment of error questioning its sufficiency before the question can be considered in a court of appeals.

A number of errors are assigned, which were proper subjects for a motion for a new trial, but are not proper matters to present to this court by independent assignments of error.

The motion for a new trial contains all the statutory causes in the statutory language, and the sixth assignment of error is that,

. "The court erred in overruling defendant's motion for a new trial."

The 7th cause for new trial is that,

"The court erred in giving instructions numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 12½, 13, 14, 15, 16, 16½, and 17."

Instruction No. 17 given by the court to the jury reads as follows:

"You need not be unanimous in your conclusions. Nine of you can agree upon a general verdict, or upon any finding in the special verdict."

This instruction is based upon the last clause of § 22, Art. 18, Chap. 70, Statutes of Oklahoma, viz.:

" When there is a panel of twelve jurors, nine may return a verdict."

The record discloses the fact that on a poll of the jury, three of the jurors refused to concur in the general verdict, and the defendant objected to the verdict being received until all should agree; but this objection was overruled, the verdict received and the jury discharged. There were a number of special interrogatories submitted to the jury to be answered with their general verdict. These interrogatories consisted of several series of four each, and called for answers as to each particular specification or charge in the information.

It was necessary that each of the four of each series be answered adversely to the appellant in order to constitute a complete finding against him on any one of the specifications.

The record discloses the fact that three of the jurors, viz: Lawson, Shannon and Omen, each refused to concur in the conclusions of the majority on the fourth interrogatory in each series, so that there was no unanimous finding by the jury against the appellant on any charge contained in the information.

It is earnestly contended by the appellant that this instruction and the actions of the court in receiving and

rendering judgment on the verdict is in conflict with the 7th amendment to the Federal constitution.

Upon the other hand it is claimed that the 7th amendment refers only to the practice in the Federal courts, and that there is no limitation on the Territorial legislature restricting jury trials.

The 7th amendment to the Federal constitution provides:

"In suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law." (R. S. U. S. p. 29.)

In determining what class of suits or actions are meant by "suits at common law," as included in this provision, the Supreme Court of the United States said:

''The intention was to confine its application to common law suits of a civil nature in which a jury by the rules of the common law constituted an element of the trial. It embraces all suits which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they assume to settle legal rights." (*Parsons v. Bellford*, 3 Pet, 433; *Warring v. Clark*, 5 Howard, 441; *Shield v. Thomas*, 59 U. S. 252; *Ins. Co. v. Comstock*, 16 Wall. 258.)

The proceeding by information under our code of civil proceedure has always been recognized by the Indiana courts as in substance and effect the original *quo warranto* proceeding, called by a different name. (*State v. Bailey*, 16 Ind. 46; *Reynolds v. State*, 61 Ind. 393; *State v. Town*, 109 Ind. 73; *Boone v. Hall*, 70 Ind. 469.)

The writ of *quo warranto* and information in the nature of *quo warranto* were both common law remedies. (3 Blackstone, 262 to 263.)

While it is true that the Supreme Court of the United States has repeatedly held that the 7th amendment has no relation or application to state courts (See *Livingston v. Moore,* 7 Pet. 469; *Edmonds v. Elliott,* 21 Wall. 532,) the national government bears a different relation to the several states to that which it bears to the territories. The states are permitted to adopt their own constitution and when such constitution receives congressional sanction, their legislative authority need look only to its limitations and restrictions, and while several of the state constitutions contain provisions preserving the right of trial by jury, others do not, and as between the Federal government and the states, the provisions of the 7th amendment are applicable only to the Federal congress and the judiciary.

The territories are the creatures of congressional action, derive all their powers, executive, legislative and judicial from the constitution and laws of the United States, and are controlled by any limitations or restrictions therein. The courts of a territory are Federal courts in the restricted sense that they are either created or authorized by Federal statutes, and derive no powers from their own legislative acts, except such as is authorized by the Federal constitution or laws.

The organic act of the Territory of Oklahoma provides:

"That the legislative power of the Territory shall extend to all rightful subjects of legislation, not inconsistent with the constitution and laws of the United States." (Sec. 6, 26 Stat. Large p. 84.)

As the legislative department of the Territory derives all its powers from the provisions of the Act creating the Territory of Oklahoma, and it is directly restricted to the enactment of such laws as are not inconsistent with the constitution and laws of the United States, we can conceive of no reasonable hypothesis

consistent with the ordinary rules of construction by which the rule as enunciated by the Supreme Court of the United States in the cases cited above, in reference to state courts, can be made to apply to the courts of this Territory.

A clear distinction has always been made between the relation of a state to the Federal government and that of a territory.

If we were in doubt as to whether or not this constitutional provision controls the legislature and courts of this Territory, § 1891 R. S. U. S., is decisive of the question. It provides :

" The constitution and all laws of the United States. which are not locally inapplicable shall have the same force and effect within all organized territories, and in every territory hereafter organized, as elsewhere in the United States."

This law was in force at the time our organic act was. adopted, and is in harmony with its provisions.

The U. S. congress has always deemed this provision of the constitution applicable to the territories, as is clearly shown by the Act of April 7, 1874, Stat. at Large, p. 27, which was an Act adopted for the purpose of removing certain doubts and uncertainties as to whether or not the mixed codes of procedure abolishing the distinction between suits at law and equity adopted by several of the territories, were in conflict. with their organic acts. This Act ratifies and confirms these laws, but contains this qualification :

" Provided, that no party has been or shall be, deprived of the right of trial by jury in cases cognizable at common law."

Here is a clear and explicit congressional recognition of the right of trial by jury, as it existed at common law in all the territories. The same provision is. embodied in § 28 of our organic act and puts in force

all the provisions of the constitution and Federal laws not locally inapplicable or in conflict with said Act.

At common law a jury consisted of twelve persons and a unanimous finding or verdict was required. This principal is so well established that we deem it unnecessary to cite authorities.

The provision in our civil code authorizing nine jurors to return a verdict where the panel consists of twelve persons is in conflict with the constitution and laws of the United States and is therefore void.

It has been suggested that the amount in controversy in this case does not bring it within the constitutional provision entitling the appellant to a trial by jury as it existed at common law.

To the appellant the amount in controversy was the salary and emoluments of the office which he held. His term began in January and continued for two years. The minimum salary fixed by the statute is six hundred dollars per year, and we judicially know that the amount in controversy is more than twenty dollars.

We are aware that the supreme court of Utah in the recent case of *Hess, et al, v. White*, 33 N. E. 243, has adopted a different construction of these provisions, but we do not consider the opinion in that case based upon sound reasoning or correct principle. It is there contended that because it is in harmony with our progress, and is fair, just and reasonable and calculated to be a great benefit to litigants that the legislative act providing for a verdict by nine jurors should be upheld. But courts cannot set aside organic laws and constitutional requirements, nor can legislatures violate or ignore them in the interest of modern progress. Such changes as our rapidly developing civilization and modern progress make necessary to meet our conditions, must be left to the people who are the

sovereigns and who create constitutions. Nor does the fact that a party to a suit may waive a constitutional right authorize the courts to set it aside for him without his consent.

Our original Federal constitution did not contain the provision in reference to trial by jury at common law, and it was to cure this ommission and give to the people this additional guarantee that the 7th amendment was adopted.

The Utah court falls into the error of treating this question as simply a change in the procedure of applying a legal remedy. The right of trial by jury as at common law, is guaranteed by this amendment to the constitution. A trial by jury at common law, as we have said, was a trial by a jury of twelve and entitled the party to a unanimous verdict, and if this provision applies to us as a Territory—and we hold that it does—then any material change takes away a substantial right and is more and goes farther than a change of legal remedy.

Our conclusion is that the appellant was entitled to a trial by a jury of twelve persons, and to a unanimous verdict of the jury; and in this we are further supported in the case of *Klienschmidt v. Dumply*, 1 Montana 118 ; reported also in 11 Wall. 610.

The court erred in giving the instruction numbered 17 and in rendering judgment on the verdict of the jury. For these errors the case must be reversed.

We deem it unnecessary to examine the other alleged errors as they may not arise again.

The judgment of the district court is reversed, and cause remanded with directions to grant a *venire de novo*

All the Justices concurring.