STATE *ex rel.* WEST, Atty. Gen., v. COBB, County Judge.

No. 676.    Opinion Filed September 14, 1909.

(104 Pac. 361.)

1.  COURTS—Supreme Court—Original Jurisdiction—Leave to Proceed.  When the ordinary original jurisdiction of the Supreme Court is invoked, leave to proceed must in all cases be first obtained from the court itself upon a **prima facie** showing that the cause is a proper one for its cognizance.

2.  JURY—Right to Trial by Constitutional Guaranty. The right of trial by jury, declared inviolate by section 19, art. 2, p. 83, Snyder's Const. Okla., except as modified by the Constitution itself, means the right as it existed in the territory at the time of the adoption of the Constitution.

3.  JURY—Right to Jury Trial—Quo Warranto. The law in force in the territory at the time of the admission of the state gave a respondent, in an action in the nature of **quo warranto,** a right to a trial by jury of all issues of fact, and this right remains in force in the state.

4.  JURY—Jurisdiction—Supreme Court—Quo Warranto.  The Supreme Court has jurisdiction of original actions in the nature of **quo warranto** when the issues involved are **publici juris,** but

where on the bringing of such action it is made to appear that an issue of fact is involved or will be involved, and that a jury will be demanded for the trial thereof, the same will be dismissed, as no power or procedure exists in this court for summoning, impaneling, or paying a jury. Nor have we any warrant for sending the action to any other tribunal possessing such authority for trial of such issues.

(Syllabus by the Court.)

Original action in the nature of *quo warranto* by the State, on relation of Charles West, Attorney General, against T. S. Cobb, County Judge. Action dismissed.

*Chas. West,* Atty Gen., and *W. C. Reeves* and *Chas. L. Moore,* Assts. Atty. Gen., for the State, citing: *U. S. v. Railroad Co.,* 3 Okla. 404; *In re Epley,* 10 Okla. 631; *State ex rel. v. Railway Co.* (Opinion of Justice Burford) 2 Okla. 112; *Wheeler v. Caldwell* (Kan.) 75 Pac. 1031; *State ex. rel. v. Moores* (Neb.) 76 N. W. 530; *State ex rel. v. Vail,* 53 Mo. 97; *State v. Allen,* 5 Kan. 213; *State v. Foster,* 32 Kan. 14; *Chumasera v. Potts,* 2 Mont. 242; *Ex parte People,* 1 Cal. 85; *State ex rel. v. Choteau Co.,* 13 Mont. 33; *State ex rel. v. Tracy,* 94 Mo. 217; *Com. v. Barroux,* 36 Pa. 262; *People ex rel. v. Clerk,* 22 Colo. 280; 2 Bailey on Jurisdiction, secs. 490, 491; *Cohen v. Virginia,* 6 Wheat. 404; *Brisco v. Com.,* 11 Pet. 312; *Worcester v. Georgia,* 6 Pet. 541; *Kimball v. Neal,* 44 Vt. 567, *Dunphy v. Belden,* 57 Cal. 427; *State v. Brown,* 5 R. I. 1; *State ex rel. v. Kent,* 1 L. R. A. (N. S.) 826; *Wolff v. Mathews,* 39 Mo. App. 376; *Hutsonpiller v. Stover,* 12 Grat. (Va.) 579; *Chicago, etc. v. Chase Co.,* 42 Kan. 223; *Kentucky v. Denison,* 24 How. 66; *State ex rel. v. Superior Court* (Wash.) 42 Pac. 123; *State v. Sharp,* 27 Minn. 39; *Mayor, etc., v. Dragan,* 45 Ala. 310; *Minn v. Hitchcock,* 185 U. S. 384; *Steamer St. Lawrence,* 1 Black. 266; *Fisher v. Cockerell,* 5 Pet. 259; *Bradford v. Territory ex rel.,* 2 Okla. 228; *State ex rel. v. Wilson,* 30 Kan. 661; *Goodacre v. Skinner,* 47 Kan. 579; *Douglass v. Rinehart,* 5 Kan. 393; *Matney v. King,* 20 Okla. 22.

*Davis & Davis* and *B. B. Blakeney,* for defendant, citing:

*People v. Board of Trade,* 193 Ill. 577; *In re Burnette,* 73 Kan. 609; *State v. Breese,* 15 Kan. 101; *State v. Foster,* 106 La. 425; *State v. Tracey,* 94 Mo. 217; *Ex parte McAnally,* 199 Mo. 512; *Armstrong v. Mayer,* 6 Neb. 355; *In re Hemil,* 9 S. D. 390; *Everett v. Hughes Co.,* 1 S. D. 365; *State v. McLean County,* 11 N. D. 356; *Ex parte Doyle* (W. Va.) 57 S. E. 824; *Ex parte Royall,* 117 U. S. 241; *Ex parte Huntington,* 137 U. S. 63; *Ex parte Ivey,* 26 Fla. 542; *State v. Stewart,* 32 Mo. 379; *Territory v. Railway Co.,* 2 Okla. 108.

DUNN, J. This is an original action in the nature of *quo warranto,* brought on the relation of the Attorney General, for the purpose of ousting the respondent, T. S. Cobb, from the office of county judge of Seminole county. Upon presentation of the petition a citation was issued to said respondent to show cause, if any he had, why the writ as prayed for should not issue. A return to this citation was made, in which the provisions of rule 14 of this court were invoked, alleging that the petition and affidavit filed by the Attorney General did not bring this case within it. It was further set forth that the witnesses for both the state and defendant were residents of Seminole county, and that it would be unjust and inequitable to respondent to subject him to the outlay and expense incident to a trial at the capital; that the cases pending on indictment referred to in the brief of the Attorney General had been dismissed for want of prosecution on the part of the state, and further, that the state could secure a fair and impartial trial in Seminole county; that the jurors of said county were honest, upright citizens, and would try and determine the cause justly and correctly. To this return are attached the affidavits of a large number of witnesses showing residence within the county of Seminole, and averring that the sentiment of the people of Seminole county is in favor of law and order and against lawlessness, and that as a whole they believe in the enforcement of the criminal laws of the state; that if defendant has committed violations of law sufficient to warrant his

removal from office a jury could easily be found in that county which would not hesitate to render a verdict against him. In addition to the foregoing it is stated by the respondent, in his brief, that it is obvious to the court that the answer of defendant would raise an issue of fact which would necessitate a trial of same by a jury. The question of whether or not the defendant would be entitled to such trial by jury, and whether or not this court could grant him the same, should it be within his rights to have it, are, with the other questions suggested, thoroughly briefed and argued by counsel for both parties.

Section 2, art 7, under the title of Judicial Department, of the Constitution, provides in part:

"The Supreme Court shall have power to issue writs of *habeas corpus,* mandamus, *quo warranto,* certiorari, prohibition, and such other remedial writs as may be provided by law, and to hear and determine the same."

Rule 14 of this court, (20 Okla. x, 95 Pac. vii) provides that:

"In all original actions or proceedings instituted in this court, it shall be necessary for the plaintiff or applicant for the writ to state fully, by affidavit, the reasons why the action or proceeding is brought in this court instead of one of the inferior courts having jurisdiction."

The Attorney General contends that he has the right to select this forum, independent of this rule, because of the fact that jurisdiction of this particular proceeding has been vested herein.

The Constitution of the state of Wisconsin contains a provision with reference to actions of this character similar to our own. Its Supreme Court likewise had a rule to the same effect. The rule adopted by that court in reference to its jurisdiction was followed by this court in the case of *Homesteaders v. Mc-Combs, ante,* p. 201, 103 Pac. 691. That court in the case of *State v. St. Croix Boom Corporation et al.,* 60 Wis. 565, 19 N. W. 396, held that:

"When the original jurisdiction of the Supreme Court is invoked, leave to proceed must, in all cases, be first obtained from

the court itself, upon a *prima facie* showing that the cause is a proper one for its cognizance."

The foregoing rule was there held to apply equally to the Attorney General with all other litigants. We have carefully considered the affidavit filed by the Attorney General in connection with the affidavits filed by the defendant; and, while in no way disparaging the citizenship of Seminole county, which we doubt not is as high in that as of any other community in the state, we are constrained, in view of the presentation made in the affidavits, oral argument, and briefs, to hold that they fairly respond to the requirements of the rule mentioned, provided the action is of such a character as to come within the doctrine of the case of *Homesteaders v. McCombs, supra.* In that case Justice Williams, who prepared it, has collated and cited a great number of authorities on this proposition, and has therein announced the rule that this court has not jurisdiction in mandamus, *quo warranto,* etc., proceedings, except where the question involved is *publici juris,* thereby relieving us of a discussion of it in this opinion. The present case, involving the question of the removal of a county judge for misconduct and malfeasance in office, in our judgment, considering the averments in the petition and affidavit along with the other showing made, presents, when all of these and the surrounding facts are fully taken into consideration, such a peculiar situation that this court is justified in and should take jurisdiction.

It is insisted by the Attorney General that the defendant is not entitled to a jury trial herein as a matter of right, and that if he is entitled to a jury trial, the machinery of the court is adequate to grant it to him. Section 19, art. 2, of the Bill of Rights of the Constitution, provides:

"The right of trial by jury shall be and remain inviolate."

The construction of this general guaranty of the Constitution has been before the courts in a great many cases. The Supreme Court of Washington, in the case of *State v. Doherty,* 16

Wash. 382, 47 Pac. 958, 58 Am. St. Rep. 39, which was likewise a proceeding in *quo warranto,* held in the syllabus that:

"The constitutional provision declaring that 'the right of trial by jury shall remain inviolate' has reference to the right to jury trial as it existed in the territory at the time when the Constitution was adopted."

This construction is sustained by a great many authorities, among which we note the following: *Callan v. Wilson,* 127 U S. 540, 8 Sup. Ct. 1301, 32 L. Ed. 223; *Work v. State of Ohio,* 2 Ohio St. 297, 59 Am. Dec. 671; *State ex rel. Jackson v. Kennie et al.,* 24 Mont. 45, 60 Pac. 589; *Kuhl et al. v. Pierce County,* 44 Neb. 584, 62 N. W. 1066; *State of Nevada v. McClear,* 11 Nev. 39; *Lavey et al. v. Doig,* 25 Fla. 611, 6 South. 259; *Ross v. Irving,* 14 Ill. 171; *Wheeler v. Caldwell,* 68 Kan. 776, 74 Pac. 1031; *Vaughn v. Scade et al.,* 30 Mo. 600.

Section 23, art. 3, of the Constitution of Montana declares that the right of trial by jury shall be secured to all, and remain inviolate. Considering this the Supreme Court said, in the case of *State ex rel. Jackson v. Kennie et al., supra:*

" \* \* \* This instrument must be construed in view of the conditions existing at the time of its adoption and that the right of trial by jury, guaranteed under this broad declaration, is the right as it then existed. and not one created or extended, except by express terms, by the instrument itself. This rule extends to both civil and criminal trials, and is applied by the courts to the Constitution of all our states. Proffatt on Jury Trial, § 87; Cooley, Const. Lim. 74; 389; *State v. Glenn,* 54 Md. 572; *Flint River Steamboat Co. v. Foster,* 5 Ga. 194, 48 Am. Dec. 248; *Ross v. Irving,* 14 Ill. 171; *Anderson v. Caldwell,* 91 Ind. 454, 46 Am. Rep. 613; *Allen v. Anderson,* 57 Ind. 388; *State v. McClear,* 11 Nev. 39; *Frazee v. Beattie,* 26 S. C. 348, 2 S. E. 125; *Stilwell v. Kellog,* 14 Wis. 461. The rule is elementary, and so well settled that further comment is unnecessary."

This is the construction to which it is susceptible, and which must be given where the provision appears in our own Constitu-

tion, subject to such changes only as are made in the instrument itself.

The case of *Bradford v. Territory ex rel. Woods,* 1 Okla. 366, 34 Pac. 66, was a proceeding in the nature of *quo warranto,* in the district court of Oklahoma county, and in that case the Supreme Court of the territory declared in the syllabus that:

"On the trial of an information in the nature of a *quo warranto* the respondent is entitled to a trial by jury, and to a unanimous verdict."

This holding was not predicated upon the statutes existing in the territory at that time, but upon the right of the defendant as the same was guaranteed under the federal Constitution. This case and this declaration was never departed from during the life of the territory, and in our judgment declared the law of the territory of Oklahoma on this subject.

The case of *Territory of Oklahoma ex rel. Galbraith v. Chicago, Rock Island & Pacific Railway Co.,* 2 Okla. 108, 39 Pac. 389, was an original action in mandamus, brought in the Supreme Court of the territory, in which the defendant raised an issue of fact, for the trial of which demand was made for a jury. That court, considering its power and authority, which was no other or different in this regard than the power and authority of this court, held, in the portion of the opinion prepared by Chief Justice Dale, that, "inasmuch as no machinery has been provided for the calling of a jury in the Supreme Court, it would be the exercise of a doubtful power for this court to prescribe rules and regulations and a line of procedure for the calling of a jury in the Supreme Court, and the trial of causes in such court by a jury; and we have agreed that no juries will be called for the trial of causes in the Supreme Court." Justice Bierer in this same case said:

"The cause cannot further proceed in this court because such issues are made as upon which the parties have a right to a jury trial, and, no means being provided by the Legislature by which this court can secure a jury, the cause must come to an end."

Justice Burford, in discussing the same matter, said:

"If it is the purpose of the Legislature that this court shall be a jury court, which would be, as has been well suggested, a detriment to public business, this being an appellate court, yet if this power is given us, we are willing to exercise it, if we are given the process by which we can carry it into proper effect."

The rule as announced in this case likewise was never departed from during the time Oklahoma remained a territory. It was the law then in force in the territory at the time of the adoption of the Constitution. Of this same rule and case this court said, in the case of *State ex rel. Brett, County Attorney, v. Kenner et al.,* 21 Okla. 817, 97 Pac. 258, and of the situation in which the court would be placed on demand for jury trial:

"Such an embarrassment was met by the Supreme Court of the territory in *Territory ex rel. Galbraith v. Chicago, Rock Island & Pacific Railway Co.,* 2 Okla. 108, 39 Pac. 389. The organic act gave the Supreme Court of the territory original jurisdiction in mandamus proceedings. In the above case mandamus proceedings were joined with a cause of action, which presented an issue of fact. Under the Code the parties had a right to demand a jury trial, which was not a matter of judicial discretion. The Supreme Court held that in such a case it was powerless to act, no way of summoning a jury having been provided by the Legislature for the Supreme Court, and the cause was accordingly dismissed."

We have had our attention called to several Kansas cases upon this proposition, among which were the cases of *State ex rel. Keeler v. Allen,* 5 Kan. 213, and *State ex rel. Johnston v. Foster,* 32 Kan. 14, 3 Pac. 534. In the Allen Case it was held that the Supreme Court of the state, under the law then existing (1869), had the power to organize a jury for the trial of a respondent in an original proceeding in *quo warranto.* We have examined the statutes to which the court refers; and, while it is of no consequence that we are not quite able to follow the logic of the construction placed thereon by that court, it is worthy of passing notice, perhaps, that they are dissimilar from the statutes of the state of Oklahoma. This case in that juris-

diction afforded a precedent for the Foster Case, in which a jury trial took place in the Supreme Court.

The conclusion to which we have come that it was not contemplated that jury trials should take place in the Supreme Court is strengthened by a legislative construction in an act of the Legislature of 1907-1908, p. 479, c. 48, art. 5, for it is therein provided that in all actions where attachment shall issue out of the Supreme Court against persons for contempt, and a jury trial shall be demanded, the court shall certify the proceedings to some district court in the state for trial by jury. This recognizes either that the Supreme Court was without power to impanel a jury, or that it was not intended to be a court for the trial of issues of fact before a jury, and probably both such conditions were deemed to exist. To the suggestion that we proceed to the point where a jury should be demanded, we submit for answer the reasoning of the Supreme Court of Missouri, in the case of *State ex rel. McIlhany, etc., v. Stewart et al.,* 32 Mo. 379, wherein in reference to such a proposition that court said:

"In the case of *Commonwealth v. Smith,* 4 Bin. 117, the Supreme Court of Pennsylvania, although invested with original jurisdiction generally, refused to entertain a motion for leave to file an information in the nature of a *quo warranto* at Pittsburgh, because it had no power to try issues in fact in that district. The Chief Justice (Tilghman) said: 'The advocates for the motion say that we ought to proceed until we meet with this impediment, that very probably no issue in fact will arise, and that, if it should, it is time enough to stop when we come to it. To this mode of reasoning I cannot accede. It behooves the court to look to their first step, or they may find themselves placed in a very undignified situation. I cannot consent to institute a proceeding of which I do not clearly see the end, in which the defendant may baffle us at his pleasure, by insisting on an issue in fact which it is not in our power to try.' Judge Gentz observed, on the same case: 'It is admitted that the information prayed for in this case is grantable or refusable, according to the sound discretion of this court, and also that, in the course of inquiry, an issue in fact may eventually demand a trial by jury. If such may be the result, and reasonable doubts may occur whether we

possess jurisdiction to try the issue in fact, we should be placed in an awkward situation by making a plunge and finding ourselves in circumstances at last that we must make a retrograde movement.' "

The Attorney General has, with commendable zeal, made a most comprehensive brief on the questions involved in which reference is made to the great quantity of learning existing on the subject in the decisions of the American courts, but to our minds the adjudication of the Supreme Court of the territory presents a correct declaration on the subject, which we deem proper and fitting to follow. Until, therefore, the Legislature provides for the impaneling of juries in this court for the trial of issues of fact, or provides authority to transfer cases of this character for trial to courts with juries, we cannot entertain them after being brought, and it is made to appear that an issue of fact is or will be presented, and that a jury will be demanded.

The action is accordingly dismissed.

All the Justices concur.